FILED

FEB 3 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| Gary S TOMLIN,<br><br>　　　Petitioner,<br><br>　　　　　　v<br><br>Michael MARTEL, Acting Warden of Mule Creek State Prison,<br><br>　　　Respondent. | Case No 1-7-cv-1170-VRW-HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

　　　　Petitioner Gary S Tomlin, a prisoner incarcerated at Mule Creek State Prison in Ione, California, seeks a writ of habeas corpus pursuant to 28 USC § 2254.

I

　　　　Petitioner was convicted in state trial court of eight felony counts based on kidnaping and sexual assault. The judgment against petitioner was affirmed on appeal (with minor modifications whereby one enhancement was stricken and the sentences imposed for two counts were stayed). People v Tomlin,

No. F042830, 2004 WL 1368368 (Cal Ct App June 18, 2004). The Supreme Court of California declined to review the matter, and numerous habeas petitions filed at all three levels of California's court system have been denied.

II

In his federal habeas petition, petitioner claims: (1) that he was deprived of his liberty without due process of law in violation of the Fourteenth Amendment by (a) the destruction and/or loss of exculpatory evidence; (b) the trial court's denial of his right to present a defense; and (c) a jury instruction that shifted the burden of proof; (2) that he was twice put in jeopardy for the same offense in violation of the Fifth Amendment; (3) that he was denied the effective assistance of counsel at his trial in violation of the Sixth Amendment; and (4) that he was denied the effective assistance of counsel for his appeal in violation of the Sixth Amendment.

A

According to the testimony at trial, upon reporting the sexual assault, petitioner's victim initially agreed to undergo a Sexual Assault Response Team (SART) examination at Kaweah Delta Hospital. However, the SART team was unavailable at that time. The victim refused subsequent requests to submit to a SART examination. Thus no SART examination ever took place. Tomlin, 2004 WL 1368368, at *6; id, at *10.

In connection with his habeas petition, petitioner submits evidence that there was a SART program in place at Kaweah

2

Delta Hospital that operated twenty-four hours a day, seven days a week, during the month that the sexual assault occurred, as mandated by law. Petitioner infers from this that the testimony that the SART team was unavailable at the time the victim agreed to be examined was false. Moreover, according to petitioner, a SART examination would have revealed that no sexual assault took place, thereby exonerating him. Thus, in Claim 1, Subclaim A, petitioner contends that the deliberate failure of the police to obtain and preserve evidence with a SART examination when one could have taken place amounts to the destruction and/or loss of exculpatory evidence in violation of the Fourteenth Amendment's provision that "No State shall . . . deprive any person of . . . liberty . . . without due process of law," US Const amend XIV § 1.

However, the fact that a SART program was in place does not mean that a SART team was immediately available at the specific time that petitioner's victim agreed to be examined, and the police are not at fault for the victim's refusal, despite the efforts of the police, of subsequent requests that the victim submit to a SART examination, Tomlin, 2004 WL 1368368, at *6. Such efforts demonstrate that there was no bad faith on the part of the police in their failure to obtain the results of a SART examination.

As petitioner correctly points out, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process or law." Arizona v Youngblood, 488 US 51, 58 (1988). Petitioner has not, indeed cannot, make such a

3

showing. Accordingly, Subclaim A of petitioner's Claim 1 lacks merit.

B

At the time that petitioner encountered his victim, Petitioner was accompanied by his dog. Tomlin, 2004 WL 1368368, at *6. The victim testified that, during the course of the sexual assault, the dog "went nuts" and tried to bite the victim's feet, legs, and face. When petitioner "ordered [the victim] to lay back on the grass and raise his legs," the victim "felt he had no choice because the dog was lunging at him." Id, at *4.

To demonstrate that this testimony about his dog was not credible, petitioner "requested to bring [his] dog into court as 'the best evidence' of the dog's calm and placid character." The trial court denied the request, finding "that witnesses could testify as to the dog's nature." Id, at *11 n7. Compelling testimony was presented to show that the dog was sweet and playful, had never been known to bite or attack anyone, and was missing a lot of teeth. Id, at *12.

In Claim 1, Subclaim B, petitioner contends that the denial of his request to bring the dog into court amounted to a denial of his right to present a defense in violation of the Due Process Clause of the Fourteenth Amendment, US Const amend XIV § 1. However, the trial court did not prevent petitioner from presenting evidence of the dog's character. Rather, the trial court merely declined to admit one particular type of evidence that would have been unnecessarily disruptive when testimony

4

sufficed to prove the point. "The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence." Taylor v Illinois, 484 US 400, 411 (1988). Accordingly, the trial court's evidentiary ruling regarding petitioner's dog comported fully with due process. See Patterson v New York, 432 US 197, 201-02 (1977).

C

The trial judge instructed the jury that "[i]t is not essential to a conviction of a charge of forcible oral copulation, sexual battery, and sexual penetration by a foreign object that the testimony of the witness with whom sexual relations is alleged to have been committed be corroborated by other evidence." Tomlin, 2004 WL 1368368, at *21. In Claim 1, Subclaim C, petitioner contends that any reasonable juror would have interpreted this instruction to mean that the absence of corroboration of the victim's testimony was not relevant when, in fact, the lack of corroborating evidence was relevant; the instruction therefore shifted the burden of proof to the defense in violation of the Fourteenth Amendment's guarantee of due process, US Const amend XIV § 1.

However, as the state court of appeal recognized, the instruction simply "declares a substantive rule of law." Contrary to petitioner's arguments, the instruction did not result in the "singling out of the testimony of the prosecuting witness with a view of giving it undue prominence before the

5

jury." The court of appeal correctly observed that the
instruction did not "dilute the beyond a reasonable doubt
standard." Tomlin, 2004 WL 1368368, at *21 (internal quotation
marks, citations, brackets, and italicization omitted).
Accordingly, use of the instruction was constitutionally
permissible under the Due Process Clause.

D

In Counts I and II, petitioner was charged with
forcible oral copulation, Cal Penal Code § 288a(c), with various
special circumstances including kidnaping, id § 667.61. In Count
III, petitioner was charged with kidnaping to commit forcible
oral copulation, id § 209(b)(1). Tomlin, 2004 WL 1368368, at *1.
The trial court sentenced petitioner to an indeterminate term of
twenty-five years to life for Count I and a consecutive
determinate term for Count II. The sentence of a determinate
term for Count III was stayed. Id, at *2.

Petitioner contends in Claim 2 of his federal habeas
petition that his conviction of multiple charges in these counts
for the same act amounts to a violation of the Double Jeopardy
Clause of the Fifth Amendment, thereby rendering his conviction
for Count III invalid. However, petitioner is not being punished
pursuant to his conviction of Count III as his sentence for that
count was stayed; thus he is not being punished twice for the
same act. "[T]he double jeopardy clause prohibits merely
punishing twice, or attempting a second time to punish
criminally, for the same offense." Helvering v Mitchell, 303 US
391, 399 (1938). There being no punishment for Count III,

petitioner's liberty has not "for the same offense [been] twice put in jeopardy," US Const amend V, and the Court cannot grant relief on Claim 2.

E

The Sixth Amendment guarantees a criminal defendant's right "to have the Assistance of Counsel for his defence," US Const amend VI. Gideon v Wainwright, 372 US 335 (1963). "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v Richardson, 397 US 759, 771 n14 (1970).

To obtain relief on a claim of ineffective assistance of counsel, petitioner must satisfy the test set forth in Strickland v Washington, 466 US 668 (1984). "Ineffective assistance under Strickland is deficient performance by counsel resulting in prejudice, with performance measured against an objective standard of reasonableness under prevailing professional norms." Rompilla v Beard, 545 US 374, 380 (2005) (internal citations and quotation marks omitted). Counsel's performance must be assessed "from counsel's perspective at the time," so as "to eliminate the distorting effects of hindsight." Strickland, 466 US at 689. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; hence "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

7

probability is a probability sufficient to undermine confidence in the outcome." Id at 694.

In Claim 3, petitioner asserts that his trial counsel rendered ineffective assistance in two ways. First, trial counsel failed to investigate and thereby discover that a SART team was available at the time his victim consented to be examined. However, as discussed above regarding Claim 1, Subclaim A, proof of this fact would have been irrelevant at petitioner's trial. For the same reasons, trial counsel was not ineffective for failing to discover and prove this fact.

Second, petitioner argues that trial counsel was ineffective for failing to have underwear tested in preparing a motion for a new trial. Prior to trial, "[a] criminalist examined several articles of clothing taken from both [petitioner and his victim], and did not find any gun oils or semen on any of the items." Tomlin, 2004 WL 1368368, at *10. It is unclear whether the underwear to which petitioner is referring was among these articles of clothing. Regardless, had the underwear been tested, the best possible outcome for Petitioner would have been not finding any gun oils or semen, as was the case with the other clothes. Petitioner was convicted despite this finding regarding the other clothes. Even if an additional finding had been made to the same effect for the underwear, there is no reasonable probability that this would have affected the outcome of the trial.

Petitioner contends in Claim 4 that his appellate counsel was ineffective for not raising claims of the ineffectiveness of trial counsel and for not contending that the

8

denial of petitioner's request to bring his dog into court amounted to a denial of his right to present a defense. As noted in the immediately preceding two paragraphs, trial counsel did not render ineffective assistance; as discussed above in connection with Claim 1, Subclaim B, the denial of petitioner's request to bring his dog into court did not amount to a denial of his right to present a defense. Petitioner's appellate counsel was not ineffective for failing to raise these meritless claims.

III

Accordingly, and good cause appearing therefor, the court hereby denies petitioner's petition for a writ of habeas corpus and declines to issue a certificate of appealability. The clerk shall enter judgment in favor of respondent, terminate all motions, and close the file.

It is so ordered.

VAUGHN R WALKER
United States District Chief Judge